1  **LAW OFFICES OF VALERIE ROSS**
   **VALERIE ROSS, SB 87664**
2  14318 California Avenue, #101
   Victorville, CA 92392
3  Tel. (760) 900-8248

4  CHARLES A. BONNER, ESQ.  SB# 85413
   A. CABRAL BONNER, ESQ. SB# 247528
5  **LAW OFFICES OF BONNER & BONNER**
6  475 GATE FIVE RD, SUITE 212
   SAUSALITO, CA 94965
7  TEL: (415) 331-3070
   FAX: (415) 331-2738
8  cbonner799@aol.com
   cabral@bonnerlaw.com
9
   ATTORNEYS FOR MR. BAHRA
10

11           **UNITED STATES DISTRICT COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

13          **EASTERN DIVISION– SAN BERNARDINO**

14
   **ERIC BAHRA**                              )   **COMPLAINT FOR DAMAGES**
15                                             )
              PLAINTIFF,                       )   **FEDERAL CLAIMS**
16                                             )   1.  **Illegal Intrusion on First Amendment**
         vs.                                   )       **Right To Free Speech In Violation of**
17                                             )       **42 U.S.C. § 1983**
   **COUNTY OF SAN BERNARDINO,** SAN           )   2.  **Retaliation For Exercising Free**
18 BERNARDINO COUNTY DEPARTMENT                )       **Speech** *Monell* **Action-Based On**
   OF CHILDREN AND FAMILY SERVICES             )       **Official Policy, Practice Or Custom In**
   ("COUNTY CFS ")  **KRISTINE**               )       **Violation of 42 U.S.C. § 1983**
19 **BURGAMY,** *In Her Individual Capacity and* )  3.  **Retaliation For Exercising Free**
   *In Her Official Capacity* **NICKOLA**      )       **Speech** *Monell* **Action-Based On Act**
20 **HACKETT,** *In Her Individual Capacity and* )      **Of Final Policymaker In Violation of**
   *In Her Official Capacity;*  **AND DOES 1** )        **42 U.S.C. § 1983**
21 **THROUGH 50, INCLUSIVE,**                  )   4.  **Retaliation For Exercising Free**
                                               )       **Speech** *Monell* **Action-Based On**
22            DEFENDANTS.                       )       **Ratification In Violation of 42 U.S.C.**
                                               )       **§ 1983**
23                                             )   5.  **Retaliation For Exercising Free**
                                               )       **Speech** *Monell* **Action-Based On**
24                                             )       **Policy Of Failure To Train Or**
                                               )       **Supervise In Violation of 42 U.S.C. §**
25                                             )       **1983**
                                               )   6.  **Wrongful Termination In Violation**
26                                             )       **Of 14th Amendment Right To**
                                               )       **Property and Equal Protection** *Monell*
                                               )       **Action-Based On Official Policy,**
                                               )       **Practice Or Custom In Violation of 42**

                              1

U.S.C. § 1983

7. **Wrongful Termination In Violation Of 14th Amendment Right To Property and Equal Protection** *Monell* **Action-Based On Act Of Final Policymaker In Violation of 42 U.S.C. § 1983**

8. **Wrongful Termination In Violation Of 14th Amendment Right To Property and Equal Protection** *Monell* **Action-Based On Ratification In Violation of 42 U.S.C. § 1983**

9. **Wrongful Termination In Violation Of 14th Amendment Right To Property and Equal Protection** *Monell* **Action- Based On Policy Of Failure To Train Or Supervise In Violation of 42 U.S.C. § 1983**

10. **Wrongful Termination In Violation Of 14th Amendment Right To Due Process,** *Skelly Monell* **Action-Based On Official Policy, Practice Or Custom In Violation of 42 U.S.C. § 1983**

11. **Wrongful Termination In Violation Of 14th Amendment Right To Due Process,** *Skelly Monell* **Action-Based On Act Of Final Policymaker In Violation of 42 U.S.C. § 1983**

12. **Wrongful Termination In Violation Of 14th Amendment Right To Due Process,** *Skelly Monell* **Action-Based On Ratification In Violation of 42 U.S.C. § 1983**

13. **Wrongful Termination In Violation Of 14th Amendment Right To Due Process,** *Skelly Monell* **Action-Based On Policy Of Failure To Train Or Supervise In Violation of 42 U.S.C. § 1983**

14. **Invasion of Privacy In Violation of Fourth and Fourteenth Amendment, In Violation of 42 U.S.C. § 1983**

15. **Defamation Per Se Slander/Liable Violation of 42 U.S.C. 1893**

**STATE CLAIMS**

16. **Violation of California Government Code § 8547**

17. **Whistleblower Protection Act**

18. **Retaliation In Violation of California Labor Code § 1102.5**

19. **Negligence California Government Code § 815.2**

20. **Defamation Per Se Slander/Liable**

)   **21. Invasion of Privacy**
)   **22. Intentional Infliction of Emotional**
)       **Distress**
)
)
)
)
)   **JURY TRIAL DEMANDED**

## INTRODUCTION

1.     Defendants terminated Plaintiff Eric Bahra's employment as a Social Services Practitioner with the San Bernardino County Department of Children and Family Services ("COUNTY CFS") in an effort to cover up Mr. Bahra's discovery of the total, complete and ongoing breakdown of the child welfare system in San Bernardino County. Mr. Bahra's discovery revealed that over a period of at least 12 years, a systemic failure in the welfare system for verifying and certifying foster parents allowed one Social Worker to remove a child from the foster home of a known abuser, and different Social Workers then to repeatedly place child after child in that same foster home with the same known abusers, despite a revoked license.

2.     On July 26, 2013, the morning after disclosing and complaining about his discovery of the breakdown of the child welfare system to his Manager Defendant Burgamy, Mr. Bahra interrupted Defendant Burgamy and her superior, Defendant Nickola Hackett, Deputy Director of the Victorville COUNTY CFS Office, frantically rifling through his desk. Upon seeing Mr. Bahra, Defendants Nickola Hackett and Burgamy immediately ordered him to do no further investigation on what he had discovered, and to turn over all of his investigative documents to them.  Mr. Bahra had discovered at least nineteen (19) separate instances where Social Workers had placed children in the foster home of a known abuser.

3.     Defendants, and each of them, directly caused the abuse of scores of children by failing to detect, repair and remedy the system-wide failure, and failing to have adequate safe guards for the deeply vulnerable children they were charged with protecting. Defendants sought to quash Mr. Bahra's discovery of the systemic failure and revelation to protect their own careers by terminating his employment instead. Defendants' act of retaliation of removing Mr. Bahra from further investigation of the systemic breakdown of the child welfare system was the first in a string of

retaliatory acts and conduct, leading to Defendants terminating Mr. Bahra's employment on or about August 18, 2015.

4.      Defendants' illegal conduct violated Mr. Bahra's rights under the First, Fifth and the Fourteenth amendments to the United States Constitution. The United States Constitution protects against the deprivation, *inter alia*, of liberty and property without due process of law. "Liberty," includes the right to be free of defamation by a government official, when such defamation is made public and occurs in connection with the denial of some significant tangible interest. *Board of Regents v. Roth* (1972) 408 U.S. 564; *Goss v. Lopez* (1975) 419 U.S. 565. "Property," among other things, includes the rights of an employee to continued public employment where the employee can be terminated only for "cause." *Arnet v. Kennedy* (1974) 416 U.S. 134.

## PARTIES

5.       ERIC BAHRA ("Mr. Bahra') is a citizen of the United States of America and is a resident of the County of San Bernardino, California.  Mr. Bahra was, at all relevant times, employed by the San Bernardino County Department of Children and Family Services, working within the County of San Bernardino, California, as a Social Services Practitioner.

6.       DEFENDANT KRISTINE BURGAMY, sued herein *In Her Individual Capacity and In Her Official Capacity* is an individual residing in the County of San Bernardino, California, and is a Managing agent of San Bernardino County Department of Children and Family Services.

7.       DEFENDANT NICKOLA HACKETT, sued herein *In Her Individual Capacity and In Her Official Capacity* is an individual residing in the County of San Bernardino, California, and is a Managing Agent and former Deputy Director of the Victorville COUNTY CFS Office of the San Bernardino County Department of Children and Family Services.

8.      Mr. Bahra is informed, believes, and based thereon, alleges that Defendant County of San Bernardino ("County") is a governmental entity in the State of California, with a principal place of business at 385 North Arrowhead Avenue, San Bernardino, California 92415.

9.      Mr. Bahra is informed, believes, and based thereon, alleges that Defendant San Bernardino County Department of Children and Family Services (hereinafter, "COUNTY CFS" and County

4

collectively "COUNTY CFS") is a governmental entity of and for the County of San Bernardino, with a principal place of business at 150 S. Lena Road, San Bernardino, CA 92415.

10.    The true names, identities and/or capacities of the individuals sued herein as DOES 1 through 50, inclusive, are currently unknown to Mr. Bahra, who, therefore, sues said Defendants by such fictitious names.  When the true name, identities, and/or capacities of these Defendants are known, Mr. Bahra will seek leave of the Court to amend this Complaint.

11.    Mr. Bahra is informed, believes, and based thereon, alleges that Defendants, and each of them, were the employees, agents, servants, supervisors, managers, officers and/or directors of each and every other Defendant, and in doing the things alleged herein, were acting within the course, scope and authority of such agency, supervision and/or employment.

12.    Mr. Bahra is further informed, believes, and based thereon, alleges that the acts, omissions, and things complained herein were done by the agents, servants, employees, supervisors, manages, officers, and/or directors of Defendants, and each of them, and were authorized, directed, approved and ratified by Defendants.

## RESPONDEAT SUPERIOR

13.    All of the described conduct, acts, and failures to act are attributed to agents and managing agents of DEFENDANT COUNTY CFS. Said acts, conduct and failures to act were within the scope of such agency and employment. At all times relevant herein, each participant was acting within the course and scope of his or her employment and agency.  Further, at all relevant times each Defendant was acting in agreement, and with the endorsement, ratification and consent of each of the other Defendants.

## RATIFICATION, ADOPTION AND AUTHORIZATION

14.    DEFENDANT COUNTY and its managing agents, in both their individual and official capacities, ratified, adopted and authorized each of the Defendants and managing agents' illegal conduct. DEFENDANT COUNTY and its managing agents, in both their individual and official capacities, knew, or should have known, that Defendant and managing agents were engaging in illegal conduct and had been warned, informed, and given prior notice of the illegal conduct.

5

15.     It is well established that when an employer ratifies the tortuous conduct of an employee, he or she becomes "liable for the employee's wrongful conduct as a joint participant." *Fretland v. County of Humboldt* (1999) 69 Cal. App. 4th 1478, 1489-1490. An employer who fails to discipline an employee after being informed of that employee's improper conduct can be deemed to have ratified that conduct. *Hart v. National Mortgage & Land Co.* (1987) 189 Cal. App. 3d 1420, 1430; *Iverson v. Atlas Pacific Engineering* (1983) 143 Cal. App. 3d 219, 228. According to the court in Iverson, supra, if an employer is informed that an employee has committed an intentional tort and nevertheless declines to "censure, criticize, suspend or discharge" that employee, a claim can be made for ratification. Id.

16.     "Ratification is the voluntary election by a person to adopt in some manner as his own, an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him.  A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is 'inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.' *Fretland*, supra 69 Cal. App. 4th 1

17.     At all relevant times alleged herein, DEFENDANT COUNTY CFS and its managing agents, in both their individual and official capacities, had actual and constructive knowledge of Defendant's, and managing agents' illegal conduct and has endorsed, ratified, and encouraged Defendants' illegal behavior. DEFENDANT COUNTY CFS, and its managing agents, in both their individual and official capacities, failed to take any corrective action to protect employees and the public from Defendants' illegal behavior.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18.     Mr. Bahra also filed an Administrative "Tort Claim" with the Clerk of the Board of Directors DEFENDANT COUNTY on February 17, 2016 and it was rejected by operation of law forty-five days later.

//

**WORKERS' COMPENSATION EXCLUSIVITY DOES NOT APPLY**

19.     Each and every wrongful, injurious, intentional, willful, discriminatory, harassing act and failure to act, by Defendants were not normal incidents of employment and were outside the scope of the employment bargain. Thus, Workers Compensation exclusive remedy set forth in California Labor Cod § 3600 et seq. will not preempt, nor bar Mr. Bahra's right to recover for damages set forth herein.

**ILLEGAL CONDUCT BY DEFENDANTS**

20.     DEFENDANT COUNTY CFS, through its managing agents, including, but not limited to, Defendants HACKETT AND BURGAMY, created a hostile work environment permeated with retaliation, sham investigations and a pattern, practice, custom and policy which violates the constitutional rights of Mr. Bahra as alleged herein.

21.      For years, and specifically during the period since 2014 until present, the Defendant COUNTY CFS  has initiated, endorsed, ratified, and approved a policy and custom, both expressed and implied, which have, and are, causing the deprivation of Mr. Bahra's civil rights when he exercised his constitutional right of free speech and right to petition the government. The COUNTY CFS is directly responsible for maintaining a custom and policy, including sham investigations as a camouflage, a pretext, for retaliation, causing the deprivations of Mr. Bahra's United States Constitutional Right of Free Speech, Right of Property, Liberty and Due Process, and Right to Petition the Government, and Defendants violated other state and federal rights.

22.     This illegal custom, practice, pattern and policy is exemplified in Defendant COUNTY CFS's managing agents, Defendants HACKETT AND BURGAMY who embarked on a campaign of retaliation and intimidation, including threatening Mr. Bahra with termination, and then terminating Mr. Bahra's employment because Mr. Bahra exercised his Right to Free Speech and Right to Petition the government.

**STATEMENT OF FACTS**

23.     Mr. Bahra was employed as a Social Services Practitioner by COUNTY CFS from November 7, 2011, until October 7, 2013, when Defendants, and each of them, wrongfully initiated a campaign of retaliatory acts, resulting in the termination of his employment on August 18, 2015.

The termination was retaliatory against him for engaging in protected activity, including but not limited to, exercising his First Amendment Rights of free speech and lodging a Whistleblower Complaint to the Department of Children and Family Services, exposing a systemic failure and a breakdown of the child welfare system, which allowed one Social Worker to remove a child from the foster home of a known abuser, and different Social Workers then to repeatedly place children in that same foster home with the same known abusers, despite the abuser's revoked license.

24.    On June 19, 2013, Mr. Bahra received an excellent annual Work Performance Evaluation, ("WPE") which was reviewed and signed by Linda Haugen, Assistant Executive Officer of San Bernardino County, and Deanna Avey-Motikeit, the Director of the San Bernardino County Department of Children and Family Services.

25.    On or about June 25, 2013, Mr. Bahra made the discovery by doing a simple but novel search of the Defendants' child welfare system's computer database.  In that short time, Mr. Bahra discovered at least nineteen (19) separate instances where Social Workers had placed children in the foster home of a known abuser.

26.    On or about June 25, 2013, directly after making the discovery, Mr. Bahra disclosed his discovery to his Manager, Kristine Burgamy.  Manager Burgamy asked Mr. Bahra if he had told law enforcement about what he had discovered. When Mr. Bahra said that he had not yet done so, Manager Burgamy responded, "Good."

27.    On or about June 26, 2013, after disclosing his discovery to Manager Burgamy, Mr. Bahra interrupted Manager Burgamy and her superior, Deputy Director Nickola Hackett, the head of the Victorville Office, as they were rifling through Mr. Bahra's desk.  When his Manager and Deputy Director saw Mr. Bahra, they ordered Mr. Bahra to do no further investigation on what he had discovered and ordered Mr. Bahra to turn over all of his investigative documents to them. Five (5) working days after his excellent evaluation, including scores ranging from 3-5, (on a scale of 0-5), with "4" indicating "Strong Performance" and "5" indicating "Very Strong Performance." Defendants Burgamy and Hackett launched their first act of retaliation against Mr. Bahra by ordering him to do no further investigation on what he had discovered and to turn over all of his investigative documents to them.

28.     Defendants Burgamy and Hackett followed this act of retaliation with a series of wrongful retaliatory acts and conduct leading to Mr. Bahra's employment being wrongfully and illegally terminated on or about August 18, 2015. Defendants, and each of them, terminated Mr. Bahra's employment as a preemptive effort to discredit Mr. Bahra should he further inform the authorities of his discovery of a systemic failure, resulting in children being placed in foster homes with documented serial child molesters.

29.     For the first time ever in his employment, after Mr. Bahra discovered and complained about the system breakdown in CFS, Defendants made the following false accusations, each an act of retaliation. The evidence shows that the county had no cause to terminate Mr. Bahra's employment, based on any of these acts of retaliation styled as allegations violating Personnel Rules:

### *ACTS OF RETALIATION*

30.     **I. Retaliating Allegation 1 in the Order of Dismissal: You were discourteous to a supervisor and refused to answer a supervisor's question after several requests during a DARE meeting on July 10, 2013: This conduct is contrary to and in violation of Personnel Rule X, Section 2 (b), (I), and is just cause for discipline under said rule.**

31.     County ultimately dismissed this allegation. This accusation was actually a concern that was brought to the attention of management by Mr. Bahra, but was then twisted and convoluted into an allegation against him. This pretext demonstrates that the County was actively engaged in "trumping up" charges against Mr. Bahra in their attempt to manufacture a case against Mr. Bahra to support termination.

32.     **II. Retaliating Allegation 2 in the Order of Dismissal: On July 11, 2013, a co-worker, Tonda Glass, filed a complaint against you, alleging that you scheduled her for an on call assignment for July 13, 2013 without her permission, and then changed it a few days later to July 10, 2013, without her permission or knowledge. This conduct is contrary to and in violation of Personnel Rule X, Section 2 (b), and is just cause for discipline under said rule.**

33.     County ultimately dismissed this allegation. Ms. Hackett acknowledged that Mr. Bahra was not doing anything untoward related to this allegation, and that Ms. Glass had even reported that Mr. Bahra was attempting to be helpful to her.  County ultimately used this allegation as a cause of action in the Order of Dismissal, and Defendants made this false accusation for the first time after Mr. Bahra discovered and complained about the system breakdown in CFS.

34.     **III. Retaliating Allegation 3 in the Order of Dismissal: You delegated workload to a co-worker without authorization to do so: This conduct is contrary to an in violation of San**

9

**Bernardino County Personnel Rule X, Section 2 (b), and is just cause for termination under said rule.**

35.     This allegation is based on Mr. Bahra allegedly giving his work to Ms. Glass in "December of 2012" while she was in the "Training Unit", not brought to the attention of Mr. Bahra until approximately seven (7) months later at the first Administrative Interview on July 25, 2013. This false accusation was made by an individual who did not like Mr. Bahra and routinely told other co-workers in the office that he was the "white devil."

36.     **IV. Retaliating Allegation 4 in the Order of Dismissal: Sergeant Robert Lomeli filed a complaint in regard to you sharing confidential statements from a possible four (4) year old sexual abuse victim to non-relatives. This conduct is contrary to and in violation of San Bernardino County Personnel Rule X, Section 2 (c), (d), and is just cause for discipline under said rule.**

37.     Mr. Bahra has had a distinguished career as a Social Worker even before his employment with Defendants and has been involved in hundreds and possibly thousands of investigations over many years. Throughout all of those investigations, Mr. Bahra has never once received a single complaint, and he has never been accused of violating policy or confidentiality. The County alleges that Mr. Bahra allowed a parent to view his iPad. This part of the allegation was completely disproved by Detective Wood's testimony.

38.     **V. Retaliating Allegation 5 as written in the Order of Dismissal: You reported seeing a pornographic picture of a minor to the San Bernardino County Sheriff's Department and County Counsel. Your statements were untruthful. This conduct is contrary to and in violation of San Bernardino County Personnel Rule X, Section 2, Subsection (b), (g) and (j), and is just cause for discipline under said rule.**

39.     Ms. Hackett alleged that Mr. Bahra "fabricated" the existence of this photo for some unknown purpose.  Ms. Burgamy was one of the chief investigators regarding this cause of action. Ms. Burgamy asserted that she had interviewed the child's mother regarding this allegation, but that she had never specifically asked the mother about the missing photo. The County had no interest in conducting an un-biased investigation and sought to terminate Mr. Bahra from his position at the onset of their investigation. The only part of this allegation that was "fabricated" was the allegation itself. In Ms. Pena's testimony, she was clear in her assertion that she informed the County that the allegation was false and that she heard the mother admit to having the photo. The fact that the photo

existed was also documented in Detective Wood's police report. When County levied this allegation against Mr. Bahra, it is clear that County ignored what Ms. Pena had to say.

40.   **VI. Retaliating Allegation 6 in the Order of Dismissal: Nadia Fuentes complained that you were rude and alleged in the Administrative Interview that her notes were "useless" and had "no substance." This conduct is contrary to and in violation of San Bernardino County Personnel Rule X, section 2 (b), (g), (j), and is just cause for discipline under said rule.**

41.   The County informed Mr. Bahra that an investigation had been conducted, that it had been determined that Mr. Bahra had not been rude to Ms. Fuentes, and that the allegation was "unsubstantiated," but then still used this allegation as a cause of action against Mr. Bahra in his termination and attempted to defend it during a Civil Service Commission Hearing.

42.   **VII. Retaliating Allegation 7 in the Order of Dismissal: You discredited the County and Children and Family Services when you accused a 19-year-old developmental delayed adult of being under the influence of drugs. This conduct is contrary to and in violation of San Bernardino County Personnel Rule X, Section 2 (b), (g), (j), and is just cause for discipline under said rule.**

43.   Ms. Hackett failed to produce any testimony or documents to support this meritless allegation. A firsthand witness, Ms. Pena, testified that Mr. Bahra never "accused" the nineteen-year-old of being on drugs. Additionally, Ms. Hackett attempted to further victimize Mr. Bahra by lying to him when she claimed that the nineteen-year-old had attempted to commit suicide and had to be hospitalized as a result of Mr. Bahra's interaction with her. Ms. Hacket reported to Mr. Bahra that she "confirmed" that the nineteen-year-old had attempted suicide; however, this was completely disproved and the nineteen-year-old did not attempt suicide. It is clear that in trumping up charges against Mr. Bahra, Ms. Hackett did not care about the truth and only sought to harm Mr. Bahra both professionally and personally.

44.   **VIII. Retaliating Allegation 8 in the Order of Dismissal: You misrepresented the accurate appearance of a home. This conduct is contrary to and in violation of San Bernardino County Personnel Rule X, Section 2, Subsection (b), (g), (j), and is just cause for discipline under said rule.**

45.   The testimony of Detective Mary Yanez supports Mr. Bahra's description of the home. Detective Yanez testified that she reviewed the Detention Report and found that Mr. Bahra's description was consistent with her own observations. Ms. Pena, a Social Worker that accompanied Mr. Bahra to the home during the investigation also testified that Mr. Bahra's description of the home was accurate and was not misrepresented or misstated. Ms. Hackett had to concede that there

were no issues with Mr. Bahra's report, stating, "I did not conclusively find that he had lied." The County's decided to dismiss this allegation.

46.     **IX. Retaliating Allegation 9 in the Order of Dismissal: You reported that the adults in the home were not cooperative and recommended obtaining assistance from law enforcement: This conduct is contrary to and in violation of San Bernardino County Personnel Rule X, Section 2 (b), (g), (j), and is just cause for discipline under said rule.**

47.     The County used this as a cause of action to terminate Mr. Bahra; however, during the Civil Service Commission hearing, they could not defend it and ultimately chose to dismiss it.

48.     **X. Retaliating Allegation 10 as written in the Order of Dismissal: You sent confidential information to unauthorized personnel. This conduct is contrary to and in violation of HS Standards for Employee Conduct Section 1 and Code of Ethics Subsection 8. This violation in and of itself is just cause for discipline under said rule.**

49.     The County also asserts that the sending of this list was a "violation of confidentiality policy." However, based on the policies the County provided, it was more than appropriate to send the list to law enforcement. Sergeant Lomeli testified that he was the head of the Crimes Against Children's Unit of the Sheriff's Department, and that it was not unusual for him to receive a list such as the one sent by Mr. Bahra, "Especially if law enforcement was engaged in an active investigation" of child abuse.

50.     **XI. Retaliating Allegation 11 in the Order of Dismissal: You had a mother write and sign a Declaration and added her biological children to the declaration after the fact. You misrepresented the exact condition of the Declaration to Detectives. This conduct is contrary to and in violation of San Bernardino County Personnel Rule X, Section 2 (b), (g), (j), and is just cause for discipline under said rule.**

51.     County was not able to provide any firsthand witnesses to support this claim. The only first-hand witness other than Mr. Bahra was Mr. Jaber, who vehemently denied that Mr. Bahra had done anything wrong and confirmed that Mr. Bahra had asked the mother for her permission to add her biological children to the declaration/safety plan to protect all the children. County provided no evidence to support this allegation.

52.     **XII. Retaliating Allegation 12 in the Order of Dismissal: Making false allegations. This conduct is contrary to and in violation of San Bernardino County Personnel Rule X, Section 2 (b), (g), (j), and is just cause for discipline under said rule.**

53.     The County dropped this allegation. County alleged all of these allegations against Mr. Bahra, but then arbitrarily started dismissing them from approximately 25 false accusations down to 12, then down to 10, ultimately down to 8. This dismissing of allegations for lack of evidence is

evidence of retaliation in search of a legitimate justifiable excuse to terminate Mr. Bahra's employment.

54.   Mr. Bahra's duties in an "advanced professional social work position" are defined as follows:

> Providing diagnosis, assessment, intervention and case management support to individuals, groups, children and/or families with complex health, psychosocial or economic problems. Work requires investigating and/or supporting cases involving neglect, abuse, emotional or behavioral problems, physical/mental disabilities or other health conditions. Cases may frequently involve assisting clients with emerge began feeling attacked by the interviewers; Counsel situations and assessment of risk, safety and bio-psycho-social welfare. Work requires developing and implementing treatment and care plans and monitoring progress toward such goals. Incumbents provide support, counseling and referrals to promote client self-sufficiency. Work is characterized by individual and group dynamics and circumstances in the investigation, assessment and determination of well-being. Work is performed under the general direction of a supervisor or manager who is available to review work and assist with treatment and care plan approaches and decisions. However, in most instances the Social Service Practitioner must be able to diffuse crisis situations and handle preliminary assessments independently. Some positions may require recommending and/or initiating legal action on behalf of the client including decisions to remove and place children. For some assignments, work is performed in the field under a variety of working conditions and in the client's home or other location.

55.   Mr. Bahra had a spotless record in his employment with the County, until he made the discovery in June 2013 that the system lacked safeguards which, in practice, allowed Social Workers to subject children to abuse by permitting them to place children in foster homes with known abusers. Although Mr. Bahra's duties included verifying a safe environment for the placement of foster children, his job duties did not include advocating for a repair, remediation and correction of the systemic breakdown in CFS's county-wide system for better protection of children. As a private citizen, Mr. Bahra complained about the clear and present and verified risk and danger to children the existing system posed, and he advocated for a system wide repair and remediation of the system. For his advocacy, he was silenced with termination.

56.   Mr. Bahra's advocacy for an immediate fix to the broken system was not his first advocacy as a private citizen in regard to conditions in the work place. The year before, Mr. Bahra had circulated a petition protesting the management style of the Defendants. At least nine (9) CFS professional employees signed Mr. Bahra's petition to HR in October 2012, just nine (9) months

before Defendants unleashed a barrage of unsubstantiated false accusations to terminate his employment. Mr. Bahra' petition stated the following:

> I have attached a petition signed by multiple employees in the Victorville Children and Family Services Office. We are requesting that an investigation be conducted due to the way that staff members are routinely treated by supervision/management. The following employees are requesting that the San Bernardino County Human Resources Office initiate an investigation into the Children and Family Services (CFS) Office in Victorville California. Throughout the past year, the working conditions in the Victorville CFS office have been on a steady decline and have become untenable. The management/supervision team in the Victorville CFS office has a complete lack of respect for the frontline Social Workers; they utilize their position of power to manipulate, make threats, coerce, and intimidate. These issues create a hostile working environment and have caused so many staff members to quit or transfer out of the office that it leaves the remaining workers carrying the load of two or three full-time Social Workers. With the dramatic decrease in the amount of Social Workers in the office, the management/supervision team still places unrealistic expectations on them, and then tells them that they have poor time management skills when work is not complete. Additionally, ***Social Workers are routinely retaliated against if they speak out against these issues and bring them to the attention of the management/supervision team.*** [Emphasis added]
> Eric Bahra, MSW
> Social Service Practitioner
> San Bernardino County
> 15480 Ramona Avenue
> Victorville, CA 92392

57.    After Mr. Bahra made the discovery and informed his superior, Defendant Kristine Burgamy, Child Welfare Services Manager, Defendants brought 12 charges of misconduct against him, all of which arose in the period between June 25, 2013, when Mr. Bahra reported the problem to Manager Burgamy, and July 11, 2013.  Four (4) of the charges are alleged as occurring on July 11, 2013, in regard to one investigation Mr. Bahra conducted involving a dead baby.

58. Mr. Bahra's job duties were to investigate allegations of serious child abuse.  In the ordinary course, a report was made to the hotline and the supervisor at the hotline determined if the report required an immediate response.  If an immediate response was required, Mr. Bahra was one of the Social Workers who might be assigned to conduct the investigation.

59.    On July 11, 2013, Mr. Bahra was assigned an immediate response on a "dead baby" case in the City of San Bernardino.  A nine-month-old baby had been found dead, wrapped in a sheet under the kitchen table.  Mr. Bahra was accompanied on this investigation by another Social Worker,

Melissa Pena, who has since left the employment of the county.  The information available to Mr. Bahra with this assignment was that there were a number of children in the home.  It is typical for another Social Worker to accompany the "lead" Social Worker, in this case Mr. Bahra, in the event that more than one or two children need to be taken into protective custody.

60. On July 11, 2013, the coroner and the police had already completed their "on scene" investigation.  Due to the suspicious circumstances surrounding the baby's death and the smell of methamphetamine in the home when Mr. Bahra and the second Social Worker arrived, Mr. Bahra sought approval and obtained approval from the supervisor at the hotline to seek a detention warrant to remove the surviving siblings of the dead baby, all toddlers themselves.  Subsequently, a judge of the Superior Court signed the warrant and the four siblings were removed.

61.    After any children are removed from the custody of parents by a Social Worker, a "detention" hearing is held where a judge decides whether the detention of the subject children was warranted.  The judge, in due course, upheld Mr. Bahra's detention of these children.

62.    In cases where the detention of children is upheld, the case then moves to a new Social Worker, called the JURISDICTIONAL WRITER ("J/D") writer," to reinvestigate the case and to make recommendations whether the allegations made by the initial Social Worker should be found true or not.

63.    In the case of these surviving siblings, Mr. Bahra and his accompanying Social Worker had placed the four children in two separate homes.  By the time the judge issued the detention warrant, it was the middle of the night, so Mr. Bahra and his accompanying Social Worker removed them while they were sleeping.  The foster mothers then picked up the sleeping children.

64.    The next morning, these two foster mothers reported that when they had a chance to examine the children, they found what appeared to be ligature marks on the wrists and ankles of the children, as well as burn marks and other injuries, such as bruises and lacerations..

65.    Mr. Bahra wrote the allegations against the parents in the case in light of the reports by the foster mothers about the condition of the children.  Mr. Bahra recommended that these children be permanently removed from their parents.

66.     In the course of the continuing investigation, these siblings were examined by the doctors at the Children's Assessment Center, and the injuries the foster mothers had observed were confirmed by these doctors: these children had ligature marks around their ankles and wrists, their bodies were scarred with burn marks as if from cigarettes.

67.     The J/D Writer confirmed the findings made in Mr. Bahra's report and, herself, recommended that these children should be permanently removed from their parents. In the usual course of a dependency case, a trial is held at which it is determined whether the allegations alleged by the Social Workers are true or not true.

68.     Such a trial was commenced before the presiding judge of the Dependency Court.  The case was continued over a number of months.  As usual, the J/D Writer, Mary Anna Whitehall, remained on the case until the allegation were found true or not true.

69.     During the course of the proceedings, Defendant Kristine Burgamy removed Mary Anna Whitehall, the J/D Writer, from the case and told her not to discuss the case further with anyone, including Mr. Bahra. Defendant Kristine Burgamy and County Counsel Beth Steigerwalt told the Court that Mr. Bahra had lied on his report, and that all of the evidence which would include the Children's Assessment Center (CAC) and doctors' reports should be sealed and a new trial granted before a judge who had not read Mr. Bahra's report.   Defendants' department was now recommending that all the children be returned to the parents.

70.     Mr. Bahra, Ms. Pena, a Social Worker who accompanied him on the investigation and Ms. Mary Anna Whitehall, the J/D writer then in a formal, written pleading informed that Court that Mr. Bahra had not lied.  Dane Burcham, Counsel for the minors, then conducted her own investigation and found that Defendant Kristine Burgamy and Defendant Nicole Hackett had tampered with the police photos by recopying photos so they would lose resolution, cropping and copying some photos with Post-it notes to cover up evidence. Defendant Kristine Burgamy and Defendant Nicole Hackett also withheld the part of the police report prepared by the Detective assigned to the investigation of the death of the baby found under the kitchen table.  Minors counsel's investigation confirmed the veracity of Mr. Bahra's reports. Minors Counsel also agreed with the recommendations to permanently remove the siblings. After Dane Burcham, Counsel for the

minors, confirmed Mr. Bahra's findings regarding the children, Beth Steigerwalt threatened to seek a cancellation of Dane Burcham's contract with the County and turn her in to the state bar of California for Libel.

71.     Mr. Bahra and the other two Social Workers brought a motion before the Court to inform the Court that the Department, in moving for a new trial, was attempting to manipulate the Court into making findings that would bolster its case against Mr. Bahra.

72.     The Social Worker, Ms. Melissa Pena, who had accompanied Mr. Bahra on the investigation on July 11, 2013, had left the employ of the county by the time she joined in the motion.  The J/D Writer, Ms. Maryanna Whitehall, was still employed by the Department.  Within six days following this Social Worker coming forward to report the wrongdoing of the Department to the Court, Ms. Whitehall was put on administrative leave.  No charges were brought against this Social Worker; however, she was just left on administrative leave.   After two months on administrative leave, this Social Worker felt forced to resign in protest of the retaliatory treatment.

73.     In bringing the allegations against Mr. Bahra, Defendant Nickola Hackett, the head of the Victorville Office, alleged that Mr. Bahra had caused a young woman to attempt suicide. Ms. Hackett went so far as to tell Mr. Bahra on the record that she herself had "confirmed" that the young woman had attempted suicide.

74.     That statement was false. The true facts are the following: The woman was never accused of being under the influence drugs by Mr. Bahra; she never attempted suicide; the police were never called to her home as a result of any contact with Mr. Bahra; she was never taken to the hospital; she was never placed on 5150 72-hour watch as a result of any contact Mr. Bahra had with her. The young woman did not suffer any adverse effects from any contact with Mr. Bahra. These true facts were at all relevant times known to the Defendants.

75.     The need for the Department to discredit Mr. Bahra has been so great that in a recent administrative hearing on a collateral matter, Manager Burgamy testified under oath that Mr. Bahra had tainted a police investigation so that a man suspected of sexually abusing a child could not be prosecuted.

17

76.     That statement was false.  The true facts are as follows: The Deputy District Attorney, Kathleen DiDonato, confirmed that she personally did prosecute the suspect without any involvement by Mr. Bahra in any respect whatsoever.  Further, The Deputy District Attorney, Kathleen DiDonato, confirmed that she never talked with Burgamy or Hackett, Mr. Bahra or any Social Worker from Defendant department.

77.     The allegations made in the Defendant's Order of Dismissal, terminating Mr. Bahra's employment, ranged from allegations that Mr. Bahra was rude, to allegations that he lied, to allegations that he breached confidentiality. All were false.

78.     In fabricating evidence to terminate Mr. Bahra's employment, Defendants telephoned and made a personal visit to the subject family's home, and informed the family, in violation of protocol, that they were visiting the family because Mr. Bahra had made a report over the hotline regarding child abuse.  Further, Defendants violated confidentiality by informing unauthorized persons of Mr. Bahra's identity as the person who had made a hotline call.

79.     The list of unauthorized persons included, but are not limited to, HR Officer Danilo Garces, Natalie Harts, Mr. Bahra's union representative, Susan Coleman, County's contract attorney who announced in open confidential proceedings Court that "Eric Called the Hotline and made the report on the family." Defendants knew that they were violating the law provided in Penal Code section 11167., requiring "(d) (1) The identity of all persons who report under this article shall be confidential and disclosed only among agencies receiving or investigating mandated reports, to the prosecutor in a criminal prosecution or in an action initiated under Section 602 of the Welfare and Institutions Code arising from alleged child abuse, or to counsel appointed pursuant to subdivision (c) of Section 317 of the Welfare and Institutions Code, or to the county counsel or prosecutor in a proceeding under Part 4". None of the people listed above are authorized by this law to have known the "The identity of all persons who report" child abuse. Defendants willfully disclosed Mr. Bahra's identity to harm him and as part of their illegal scheme to terminate his employment.

80.     Defendants said they fired Mr. Bahra because he lied on reports and breached confidentiality, yet at no time could Defendants identify any specific law or policy purportedly breached. Yet, on April 14, 2015, when the County was in trouble, facing a costly lawsuit by a

18

grandparent, the County's own attorney, Douglas Smith, supported a motion for summary judgment with evidence in a declaration, swearing under the penalty of perjury that Mr. Bahra was honest and had not lied on his reports.

81.     On June 25, 2013, the San Bernardino Sheriff's Department Crimes Against Children and COUNTY CFS were conducting a joint investigation into a long-time foster home where a former foster child, a young girl, disclosed sexual abuse by the foster father.

82.     In June, 2013, Mr. Bahra was assigned to a joint investigation by the Department of Children's Services and the Sheriff's Department concerning sexual abuse of children by a foster parent.  Two children disclosed that the foster father had sexually abused them and had taken naked photos of them, which he then placed in an album which contained many photos of other naked children.

83.     The Detective, Michelle Brand, assigned by the Sheriff's Department, asked Mr. Bahra to provide further information regarding other children who had been placed in that foster home in the past.  Supervisors in the COUNTY CFS office then produced a list of children who had been placed in the foster home, going back to 2001.

84.     Social Workers had placed 39 children in the home since 2001, but Mr. Bahra could find no prior complaints about the home.  Mr. Bahra's education, training and experience led him to believe that finding no prior complaints was unusual in the circumstance of allegations of sexual abuse, particularly in this case, where two children disclosed that they had been in the home for 3.5 years and had been sexually abused the entire time, and that they had seen the foster father's album containing nude photographs of many children.

85.     It was then that Mr. Bahra made the discovery about the County's child welfare database.  That database warehouses all case information and is the database utilized by all County Social Workers in all aspects of their work, including the placement of children in foster homes.  Mr. Bahra discovered that this database lacks a system of cross checking, with the result that one Social Worker can substantiate abuse by a foster parent and remove the child, but that another social worker can come right behind and place another child in the home with a foster parent determined to be an abuser.

86.     Mr. Bahra discovered that this revolving door had resulted, time and time again, in children being placed at risk in foster homes with known abusers, evidencing a total, complete and continuing breakdown of the very system mandated to protect children.

87.      The child who was the initial subject of the joint COUNTY CFS – Sheriff's Department investigation into sexual abuse by her foster father was the 57th child placed in that home, following actual decertification of the foster home prior to 2001.

88.     After Mr. Bahra assisted the Sheriff Department in their investigating of child abuse by providing the Sheriff Department with a list of potentially abused child victims, as he was authorized to do by his superior, Hope Henry, Mr. Bahra was terminated in an effort to cover up the failure of Defendants' system.

89.     The system's failure was turned into malfeasance by the Defendants' to cover up and discredit Mr. Bahra. That malfeasance was exacerbated when Defendants attempted to further discredit Mr. Bahra in regard to manipulating the Court in the case of the dead baby under the table.

**FEDERAL CLAIMS**

**FIRST CAUSE OF ACTION**
**Retaliation For Exercising Free Speech**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendants Nickola Hackett and Kristine Burgamy)**

90.     Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

91.     Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

92.     At all times herein relevant Defendants Nickola Hackett and Kristine Burgamy were acting under color of state law.

93.     The First Amendment of the United States Constitution states: "Congress shall make no law abridging the freedom of speech, or the press."  The First Amendment has been interpreted to apply to all government organizations in the United States.  It applies to state and local governments

through operation of the Fourteenth Amendment Due Process Clause, which incorporates the free speech protection of the First Amendment.

94.     Public employees have the right not to have the government restrict their speech on the basis of the speech's viewpoint.  Such restrictions are rarely permitted.[1]  The rationale for prohibiting suppression of public employee speech pertaining to matters of public interest is to protect employees from their superiors who may exercise their authority because the superior disagrees with the content of the employee's speech.[2]  The government must meet a high standard for restricting speech in a public forum.

95.     The United States Supreme Court has developed a test to determine when First Amendment protection attaches to a public employees' speech.  A public employee's speech is protected if (1) The speech is a matter of "public concern," (2)  The employee spoke as a private citizen and not a public employee (i.e., speech is not pursuant to "official duties"),; and (3) The employee's speech interest outweighs the agency's interest in efficiency and effectiveness.  *Eng v. Cooley* 552 F.3d 1062, 1070-71 (9th Cir. 2009).

96.     Mr. Bahra's speech advocating the repair and remediation of the systemic failure in CFS'S verification and certification system, and his advocacy for the elimination of a hostile and retaliatory work environment were matters of public concern.  As a private citizen who had worked in Child Family Services in Springfield, Missouri for several years before his employment with Defendants, Mr. Bahra harbored deep, sincere feelings for protecting children as well as strong feelings for his colleagues who also performed this valuable work of caring for and protecting children. Mr. Bahra's speech was not part of his job duties.  Mr. Bahra's speech to HR and to his managers on matters of public concern meant to inform managers on a crisis that had existed for years, and to elevate awareness of the managers, in order for the managers to take immediate, affirmative and corrective action to protect children. Mr. Bahra's speech was not about a personal workplace issue or a personal grievance, but about protecting children, a matter of public concern.

---

[1] *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819, 829 (1995).
[2] "Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech. Justice Thurgood Marshall in *Rankin v. McPherson* 483 U.S. 378 (1987)

97.     At all relevant times, Mr. Bahra was speaking as a private citizen.  When Mr. Bahra spent over 40-50 hours attempting to figure out why children had been placed with known foster parents known to CFS to be child molesters, and when he presented his findings and advocated for a fix to the latent system failure, he was acting out of concern  and speaking as a private citizen, not as a public employee.

98.     Mr. Bahra's speech interest outweighs the agency's interest in efficiency and effectiveness. The third prong of whether Mr. Bahra's speech was protected is whether the employee's speech interest outweighs the agency's interest in efficiency and effectiveness.  The balancing test for this prong, called the "Pickering" test, weighs the speech interest of a public employee under the First Amendment with the legitimate interest of the government in regulating the speech in the way it chose to do.  Defendants Nickola Hackett and Kristine Burgamy chose to regulate Mr. Bahra's protected advocacy speech by terminating his employment, the ultimate adverse employment action.  Mr. Bahra's public speech did not interfere with Mr. Bahra's ability to perform his duties. His speech did not obstruct any routine office operations. Mr. Bahra did not have any close working relationship premised on loyalty or confidentiality with any of his colleagues for whom he petitioned the employer. Mr. Bahra did not disrupt the work environment, the agency, or routine office procedures with his computer research of the system in efforts to ascertain the crack in the system that was allowing foster parents with revoked licenses to be eligible to receive additional children. Mr. Bahra's protected speech provided great public benefit to the public, to children and to the CFS.

99.     Mr. Bahra did not violate any COUNTY CFS rule by circulating the petition or advocating for a system overhaul of CFS computer system.  Defendant COUNTY CFS's supposed rules and reasoning are not important enough to justify suppressing Mr. Bahra's United States constitutionally protected speech by terminating his employment.

100.     Defendant Defendants Nickola Hackett and Kristine Burgamy deprived Mr. Bahra of his rights under the First Amendment to the United States Constitution when it terminated Mr. Bahra for having engaged in protected speech and advocacy.

101.    Defendant Defendants Nickola Hackett and Kristine Burgamy took adverse employment action against Mr. Bahra as herein alleged, including but not limited to, terminating his employment. These adverse employment actions were such that a reasonable employee would have found them to be materially adverse and that they would have dissuaded a reasonable employee of Defendant COUNTY CFS from engaging in this protected speech activity.

102.    Mr. Bahra's speech was a substantial or motivating factor for the adverse employment actions taken against him by Defendants Nickola Hackett and Kristine Burgamy.

103.    Defendants' intentional and negligent actions and failures, including but not limited to, inadequate training and hiring practices, as alleged above as to Mr. Bahra, constitute a policy, pattern, practice, and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.  Defendants, while acting under color of state authority and law, deprived Mr. Bahra of his federal and statutory right to free speech pursuant to the First Amendment.

104.    The conduct of Defendants, and each of them, at all times relevant and as set forth above, constitutes violations under color of law of Mr. Bahra's rights, privileges and immunities guaranteed him by the First Amendment of the United States Constitution.

105.    Defendant Defendants Nickola Hackett and Kristine Burgamy violated Civil Rights Laws of the United States, 42 U.S.C. § 1983 when it failed to take steps to prevent these Defendants from taking these illegal actions when it had notice.

106.    Defendants' actions have caused and continue to cause Mr. Bahra substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorneys' fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

107.    As to Defendants Nickola Hackett and Kristine Burgamy, the acts of these Respondents, as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Mr. Bahra and to cause him mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Mr.

Bahra and with the intent to injure, constituting oppression, fraud, and malice, entitling Mr. Bahra to punitive damages against these individual Defendants only.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

## SECOND CAUSE OF ACTION
**Retaliation For Exercising Free Speech**
***Monell* Action- Based on Official Policy, Practice or Custom**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendant Employer)**

108.   Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

109.   Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

110.   To state a claim of retaliation under Section 1983, Mr. Bahra must allege: (1) that his conduct was protected by the Constitution; and (2) that the protected conduct was a substantial or motivating factor in any retaliatory acts taken by the state actor Defendants.‖ *Pankey v. City of Concord*, 6-CV-03737-JCS, 2008 WL 793873, at * 9 (N.D. Cal. Mar. 24, 2008) (citing *Berry v. Atkins*, 93-CV-20473-WAI, 1995 WL 691869, at *3 (N.D. Cal. Nov.15, 1995)).

111.   Mr. Bahra's conduct was protected by the First Amendment of the United States Constitution as herein above alleged.  This protected conduct was a substantial or motivating factor in the adverse employment actions taken by Defendants.  Prior to his termination, Mr. Bahra had received glowing reviews and was a productive, well performing employee.  Defendants, and each of them, were acting under of color of law at all times herein relevant.

112.   The acts of Defendants COUNTY CFS, HACKETT, and HACKETT deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth. Defendants COUNTY CFS, Hackett and Burgamy acted pursuant to an expressly adopted official policy, longstanding practice and custom of DEFENDANT COUNTY CFS of retaliating against employees who dared to speak up against unjust and defective working conditions.

113.    Defendants' adverse employment actions against Mr. Bahra as herein alleged were unprivileged, unlawful, and without a business purpose.  Defendants' actions and failures as alleged herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.  Defendants, while acting under color of state authority and law, wrongfully and intentionally retaliated against Mr. Bahra for his participation in statutorily protected activity.

114.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

115.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

116.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

117.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

118.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and

employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

119.   Finally, as a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

   Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

**THIRD CAUSE OF ACTION**
**Retaliation For Exercising Free Speech**
***Monell* Action- Based on Act of Final Policymaker**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendant Employer)**

120.   Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

121.   Mr. Bahra's conduct was protected by the First Amendment of the United States Constitution as herein above alleged. This protected conduct was a substantial or motivating factor in the adverse employment actions taken by Defendants.  Prior to his termination, Mr. Bahra had received glowing reviews and was a productive, well performing employee.

122.   Defendant Nickola Hackett, acting in her official capacity, and Defendant Kristin Burgamy, acting in her individual capacity, acted under of color of law at all times herein relevant.  A person acts "under color of law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

123.   The acts of Defendants COUNTY CFS, Hackett, and Burgamy deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution, as herein set forth.

124.   Defendant Nickola Hackett, Director of CFS, had final policymaking authority from Defendant COUNTY CFS concerning the acts herein alleged.

125.   When Defendant Nickola Hackett engaged in these acts, she was acting as a final policymaker for Defendant COUNTY CFS.

26

126.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

127.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the DEFENDANT COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

128.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

129.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

130.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

131.    Finally, as a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

27

### FOURTH CAUSE OF ACTION
**Retaliation For Exercising Free Speech**
***Monell* Action- Based On Ratification**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendant Employer)**

132.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

133.    Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

134.    Mr. Bahra's conduct was protected by the First Amendment of the United States Constitution as herein above alleged.  This protected conduct was a substantial or motivating factor in the adverse employment actions taken by Defendants.  Prior to his termination, Mr. Bahra had received glowing reviews and was a productive, well performing employee.

135.    Defendants COUNTY CFS and Nickola Hackett acting in her official capacity, Defendant Burgamy, acting in her individual capacity, were acting under of color of law at all times herein relevant.  A person acts "under color of law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

136.    The acts of Defendants COUNTY CFS, HACKETT, and Burgamy deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth.

137.    Defendant Nickola Hackett had final policymaking authority from Defendant COUNTY CFS concerning the acts herein alleged.

138.    When Defendant Nickola Hackett, Director of CFS, engaged in these illegal acts, she was acting as a final policymaker for DEFENDANT COUNTY CFS.

139.    Defendants, and each of them, and their authorized policymaker superiors, ratified Defendant Nickola Hackett's conduct; and Defendant Hackett ratified the conduct of Burgamy, as herein alleged and the basis for them. Defendants, and each of them, knew of and specifically approved the managing employee's acts.

28

140.     As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

141.     As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing his usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained, according to proof. Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

142.     As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

143.     As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

144.     The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions.   Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

145.     Finally, as a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

## **FIFTH CAUSE OF ACTION**

**Retaliation For Exercising Free Speech**
***Monell* Action- Based on Policy of Failure To Train or Supervise**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendant Employer)**

146.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

147.    Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

148.    Mr. Bahra's conduct was protected by the First Amendment of the United States Constitution as herein above alleged.  This protected conduct was a substantial or motivating factor in the adverse employment actions taken by Defendants.  Prior to his termination, Mr. Bahra had received glowing reviews and was a productive, well performing employee.

149.    Defendant Nickola Hackett acting in her official capacity, and Burgamy acting in her individual capacity, were acting under of color of law at all times herein relevant. A person acts "under color of law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

150.    The acts of Defendants COUNTY CFS, Hackett, and Burgamy deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth.

151.    '[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights.'[3]

152.    The training policies of Defendant COUNTY CFS were not adequate to train or supervise its employees to handle the usual and recurring situations with which they must deal.

153.    Defendant COUNTY CFS was deliberately indifferent to the obvious consequences of its failure to train its employees adequately.  DEFENDANT COUNTY CFS knew that its failure to

---

[3] *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992), citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The policy of inaction must be a conscious or deliberate choice among various alternatives. Berry v. Baca, 379 F.3d 764, 767 (9th Cir.2004).

30

train or supervise adequately made it highly predictable that its employees would engage in conduct that would deprive persons such as Mr. Bahra of his rights.

154.   The failure of Defendant COUNTY CFS to provide adequate training caused the deprivation of Mr. Bahra's rights by Defendants, and each of them; the Defendants' failure to train or supervise is so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused the ultimate injury.

155.   As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by DEFENDANT COUNTY CFS.

156.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

157.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

158.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

159.   The conduct of individual Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and

employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

160.    Finally, as a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

## SIXTH CAUSE OF ACTION
### Wrongful Termination
### In Violation of 14th Amendment Right To Property and Equal Protection
### *Monell* Action- Based on Official Policy, Practice or Custom
### In Violation of 42 U.S.C. § 1983
### (Against Defendant Employer)

161.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

162.    Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

163.     Mr. Bahra engaged in the protected activity described above and incorporated it as though set forth here in full. Defendants COUNTY CFS, and Defendant HACKETT, acting in her official capacity, acted under of color of law at all times herein relevant. The acts of Defendants, and each of them, deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth, and under the Fourteenth Amendment Right to Property and Equal Protection.

164.    Defendants COUNTY CFS, Hackett and Burgamy acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY CFS of retaliating, discriminating and silencing any criticism of a failing administration, which has failed its employees, failed the children it is charged to protect and failed the people, the public and the tax payers of San Bernardino and the state of California.

165.    The Defendants' acts, as herein alleged, were so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused Mr. Bahra's ultimate injuries as herein alleged.

32

166.    Defendants wrongfully and in retaliation terminated the employment of Mr. Bahra in violation of public policy, including the public policy boldly enumerated in Mr. Bahra's First Amendment Right to Free Speech, and his Fourteenth Amendment Right to his property, his earnings from his employment with the COUNTY CFS, and to be free from retaliation by his government in the workplace.  Defendants terminated Mr. Bahra's employment by illegally intruding on his First Amendment Right to Free Speech as herein alleged, and Mr. Bahra's speech was a motivating factor in his termination. Mr. Bahra was treated differently than other similarly situated COUNTY CFS employees in violation of his Fourteenth Amendment right of equal protection.

167.    Defendants' adverse employment actions against Mr. Bahra as herein alleged were unprivileged, unlawful, and without a business purpose. Defendants' actions and failures as alleged herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, including a violating of 42 U.S.C. § 1983.  Defendants, while acting under color of state authority and law, wrongfully and intentionally retaliated against Mr. Bahra by terminating his employment for his participation in statutorily protected activity.

168.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in each and every retaliatory act taken by Defendant COUNTY CFS.

169.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest

pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

170.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

171.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

172.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions.    Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

173.    Finally, as a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

### SEVENTH CAUSE OF ACTION
**Wrongful Termination**
**In Violation of 14th Amendment Right To Property and Equal Protection**
***Monell* Action- Based on Act of Final Policymaker**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendant Employer)**

174.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

175.    Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

176.    Mr. Bahra engaged in the protected activity described above and incorporates such as though set forth here in full. Defendants COUNTY CFS and Director of CFS Nickola Hackett, acting in her official capacity as the final policy maker, and Defendant Burgamy acting in her individual capacity, acted under of color of law at all times herein relevant.  A person acts "under

34

color of law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

177.    The acts of Defendants, and each of them, deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth.

178.    Defendant Nickola Hackett was acting as the final policymaker, with final policymaking authority from Defendant COUNTY CFS concerning these illegal acts herein alleged and carried out these illegal acts with deliberate indifference to Mr. Bahra's constitutional rights, including his First, Fourth and Fourteenth Amendment Rights.

179.    The acts as herein alleged of Defendants were so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused Mr. Bahra's ultimate injuries as herein alleged.

180.    Defendants wrongfully and retaliatory terminated the employment of Mr. Bahra in violation of public policy which provides for Mr. Bahra's right to free speech, to maintain his property right in his employment with the COUNTY CFS, and to be free from retaliation in the workplace. DEFENDANTS terminated Mr. Bahra's employment by illegally intruding on his First Amendment Right to Free Speech and Fourth Amendment Right of Due Process as herein alleged, and Mr. Bahra's speech was a motivating factor in his termination. Mr. Bahra was treated differently than other similarly situated COUNTY CFS employees, in violation of his Fourteenth Amendment right of equal protection.

181.    Defendants' adverse employment actions against Mr. Bahra as herein alleged were unprivileged, unlawful, and without a business purpose. Defendants' actions and failures as alleged herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.   Defendants, while acting under color of state authority and law, wrongfully and intentionally retaliated against Mr. Bahra for his participation in statutorily protected activity.

182.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental,

and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

183.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

184.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

185.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

186.    The conduct of individual Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions.  Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

187.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

### EIGHTH CAUSE OF ACTION
**Wrongful Termination
In Violation of 14th Amendment Right To Property and Equal Protection
*Monell* Action-Based on Ratification
In Violation of 42 U.S.C. § 1983
(Against Defendant Employer)**

188.   Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

189.   Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

190.    Mr. Bahra engaged in the protected activity described above and incorporated as though set forth here in full. Defendant COUNTY CFS, Defendant Nickola Hackett, Director of CFS, acting in her official capacity, and Defendant Burgamy acting in her individual capacity, acted under of color of law at all times herein relevant.  A person acts "under color of law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

191.   The acts of Defendants COUNTY CFS, Hackett, and Burgamy deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth.

192.   Defendant Nickola Hackett was acting as the final policymaker, with final policymaking authority from Defendant COUNTY CFS concerning the illegal acts herein alleged and carried out these illegal acts with deliberate indifference to Mr. Bahra's constitutional rights, including his First, Fourth and Fourteenth Amendment Rights.

193.   Defendants, and each of them, and their authorized policymaker superiors, ratified Defendant Nickola Hackett and Burgamy's illegal acts as herein alleged. Defendants, and each of them, knew of and specifically approved of the managing agents and employee's illegal acts.

194.   The acts as herein alleged of DEFENDANTS were so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused Mr. Bahra's ultimate injuries as herein alleged.

195.   Defendants wrongfully and in retaliation terminated the employment of Mr. Bahra in violation of public policy which provides for Mr. Bahra's right to free speech, to maintain his property right in his employment with the COUNTY CFS, and to be free from retaliation in the workplace. DEFENDANTS terminated Mr. Bahra's employment by illegally intruding on his First

37

Amendment Right to Free Speech and Fourth Amendment Right of Due Process as herein alleged, and Mr. Bahra's speech was a motivating factor in his termination. Mr. Bahra was treated differently than other similarly situated COUNTY CFS employees in violation of his Fourteenth Amendment right of equal protection.

196.    Defendants' adverse employment actions against Mr. Bahra as herein alleged were unprivileged, unlawful, and without a business purpose.  Defendants' actions and failures as alleged herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.   Defendants, while acting under color of state authority and law, wrongfully and intentionally retaliated against Mr. Bahra for his participation in statutorily protected activity.

197.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

198.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the DEFENDANT COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

199.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

200.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

201.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

202.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

**NINTH CAUSE OF ACTION**
**Wrongful Termination**
**In Violation of 14th Amendment Right To Property and Equal Protection**
***Monell* Action- Based on Policy of Failure To Train or Supervise**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendant Employer)**

203.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

204.    Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

205.    Mr. Bahra engaged in the protected activity described above and incorporated as though set forth here in full.

206.    Defendants COUNTY CFS, Nickola Hackett acting in her official capacity, and Burgamy acting in her individual capacity, acted under of color of law at all times herein relevant.  A person acts "under color of law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

207.    The acts of Defendants COUNTY CFS, Hackett, and Burgamy deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth.

208.    "[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights."[4]

209.    The training policies of Defendant COUNTY CFS were not adequate to train or supervise its employees to handle the usual and recurring situations with which they must deal.

210.    Defendant COUNTY CFS was deliberately indifferent to the obvious consequences of its failure to train its employees adequately.  DEFENDANT COUNTY CFS knew that its failure to train or supervise adequately made it highly predictable that its employees would engage in conduct that would deprive persons such as Mr. Bahra of his rights.

211.    The failure of Defendant COUNTY CFS to provide adequate training caused the deprivation of Mr. Bahra's rights by Defendants, and each of them; the Defendants' failure to train or supervise is so closely related to the deprivation of the Mr. Bahra's rights as to be the moving force that caused the ultimate injury.

212.    The acts of Defendants as herein alleged were so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused Mr. Bahra's ultimate injuries as herein alleged.

213.    Defendants wrongfully and retaliatory terminated the employment of Mr. Bahra in violation of public policy which provides for Mr. Bahra's right to free speech, to maintain his property right in his employment with the COUNTY CFS, and to be free from retaliation in the workplace. Defendants terminated his employment as a result of illegally intruding on his First Amendment Right to Free Speech and Fourth Amendment Right of Due Process as herein alleged, Mr. Bahra's speech was a motivating factor in his employment termination.

214.    Defendants' adverse employment actions against Mr. Bahra as herein alleged were unprivileged, unlawful, and without a business purpose.  Defendants' actions and failures as alleged

---

[4] *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992), citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The policy of inaction must be a conscious or deliberate choice among various alternatives. Berry v. Baca, 379 F.3d 764, 767 (9th Cir.2004).

herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.  Defendants, while acting under color of state authority and law, wrongfully and intentionally retaliated against Mr. Bahra for his participation in statutorily protected activity.

215.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

216.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

217.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

218.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

219.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

220.    Finally, as a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

**TENTH CAUSE OF ACTION**
**Wrongful Termination**
**In Violation of 14th Amendment Right To Due Process, Skelly**
***Monell* Action- Based on Official Policy, Practice or Custom**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendant Employer)**

221.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

222.    Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

223.    The United States Constitution provides: "nor shall any State shall deprive any person of life, liberty, or property without due process of law."  The Right To Due Process includes a *Skelly* Right, the Due Process Right of notice to a public employee of an intended disciplinary action. This right includes the right to obtain a copy of the materials on which the action is based, and an opportunity to respond orally or in writing to an impartial reviewed prior to discipline being imposed.[5] The Fourteenth Amendment Right to Due Process include the right to be free of governmental fabricated, false and concocted evidence to support adverse employment action, such as termination of Mr. Bahra's employment. Defendants, and each of them, diligently searched for evidence against Mr. Bahra to support their rushed action to terminate his employment to cover-up Defendants' malfeasance, which caused scores of children to be placed in foster homes with known child molesters. Defendants, and each of them provided sham investigations and hearing supported with fabricated, false and concocted evidence. False evidence cannot and does not support the required Fourteenth Amendment Right of Due Process.

---

[5]   *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194

224.    Mr. Bahra engaged in the protected activity described above and incorporated as though set forth here in full. Mr. Bahra was summarily terminated and not provided with all of his Constitutional Rights to Due Process.

225.    Defendants COUNTY CFS, Nickola Hackett acting in her official capacity, and Burgamy acting in her individual capacity, acted under of color of law at all times herein relevant.

226.    The acts of Defendants, and each of them, deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth, and under the Fourteenth Amendment Right to Due Process, including but not limited to his *Skelly* rights.

227.    Defendants COUNTY CFS, Nickola Hackett and Burgamy acted pursuant to an expressly adopted official policy and a longstanding practice and custom of DEFENDANT COUNTY CFS of retaliating against employees who dared to speak up against unjust and defective working conditions.

228.    The acts as herein alleged of Defendants were so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused Mr. Bahra's ultimate injuries as herein alleged.

229.    Defendants wrongfully and retaliatory terminated the employment of Mr. Bahra in violation of public policy which provides for Mr. Bahra's right to Due Process, to maintain his property right in his employment with COUNTY CFS, and to be free from retaliation in the workplace. Defendants terminated Mr. Bahra's employment by illegally intruding on his First Amendment Right to Free Speech and Fourth Amendment Right of Due Process as herein alleged. Mr. Bahra's speech was a motivating factor in his termination. Mr. Bahra was treated differently than other similarly situated COUNTY CFS employees in violation of his Fourteenth Amendment right of equal protection.  Defendants' adverse employment actions against Mr. Bahra as herein alleged were unprivileged, unlawful, and without a business purpose.

230.    DEFENDANTS' actions and failures as alleged herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.  Defendants, while acting under color of state authority and law, wrongfully and intentionally failed to provide Mr. Bahra with his Right to Due Process.

231.   As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

232.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

233.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

234.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

235.   The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

236.   As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

44

**ELEVENTH CAUSE OF ACTION**
**Wrongful Termination**
**In Violation of 14th Amendment Right To Due Process, Skelly**
***Monell* Action- Based on Act of Final Policymaker**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendant Employer)**

237.   Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

238.   Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

239.   The United States Constitution provides: "nor shall any State shall deprive any person of life, liberty, or property without due process of law."  The Right to Due Process includes a *Skelly* Right, the Due Process Right of notice to a public employee of an intended disciplinary action. This right includes the right to obtain a copy of the materials on which the action is based, and an opportunity to respond orally or in writing to an impartial reviewed prior to discipline being imposed.[6]  The Fourteenth Amendment Right to Due Process includes the right to be free of governmental fabricated, false and concocted evidence to support adverse employment action, such as termination of Mr. Bahra's employment.

240.    Mr. Bahra engaged in the protected activity described above and incorporated as though set forth here in full. Mr. Bahra was summarily terminated and not provided with all of his Constitutional Rights to Due Process.

241.    Defendants COUNTY CFS, Nickola Hackett, as Director of CFS, acting in her official capacity, and Burgamy acting in her individual capacity, acted under of color of law at all times herein relevant.

242.    The acts of Defendants, and each of them, deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth, and under the Fourteenth Amendment Right to Due Process including but not limited to his *Skelly* rights.

---

[6]  *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194

243.     Defendant Nickola Hackett as Director of CFS had final policymaking authority, and was acting as the final policymaker for Defendant COUNTY CFS concerning these illegal acts herein alleged.

244.     The acts as herein alleged of Defendants were so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused Mr. Bahra's ultimate injuries as herein alleged.

245.     Defendants wrongfully and retaliatory terminated the employment of Mr. Bahra in violation of public policy which provides for Mr. Bahra's right to Due Process, to maintain his property right in his employment with COUNTY CFS, and to be free from retaliation in the workplace. Defendants terminated his employment as a result of illegally intruding on his First Amendment Right to Free Speech and Fourth Amendment Right of Due Process as herein alleged. Mr. Bahra's speech was a motivating factor in his employment termination.

246.     Defendants' adverse employment actions against Mr. Bahra as herein alleged were unprivileged, unlawful, and without a business purpose.  Defendants' actions and failures as alleged herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.  Defendants, while acting under color of state authority and law, wrongfully and intentionally terminated Mr. Bahra without providing the constitutionally required Due Process.

247.     As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

248.     As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions

and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

249.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

250.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

251.   The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

252.   As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

### TWELFTH CAUSE OF ACTION
**Wrongful Termination**
**In Violation of 14th Amendment Right To Due Process, Skelly**
*Monell* **Action- Based on Ratification**
**In Violation of 42 U.S.C. § 1983**
**(Against Defendant Employer)**

253.   Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

254.   Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

255.   The United States Constitution provides: "nor shall any State shall deprive any person of life, liberty, or property without due process of law."  The Right to Due Process includes a *Skelly*

Right, the Due Process Right of notice to a public employee of an intended disciplinary action. This right includes the right to obtain a copy of the materials on which the action is based, and an opportunity to respond orally or in writing to an impartial reviewed prior to discipline being imposed.[7] The Fourteenth Amendment Right to Due Process includes the right to be free of governmental fabricated, false and concocted evidence to support adverse employment action, such as termination of Mr. Bahra's employment.

256.    Mr. Bahra engaged in the protected activity described above and incorporated as though set forth here in full. Mr. Bahra was summarily terminated and not provided with all of his Constitutional Rights to Due Process.

257.    Defendants COUNTY CFS, Nickola Hackett acting in her official capacity, and Kristin Burgamy acting in her individual capacity, acted under of color of law at all times herein relevant.

258.    The acts of Defendants, and each of them, deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth, and under the Fourteenth Amendment Right to Due Process including but not limited to his Skelly rights. The Fourteenth Amendment Right to Due Process include the right to be free of governmental fabricated, false and concocted evidence to support adverse employment action, such as termination of Mr. Bahra's employment.

259.    Defendant Hackett had final policymaking authority from Defendant COUNTY and was acting as final policymaker for Defendant COUNTY CFS.

260.    When Defendants Nickola Hackett and Kristine Burgamy engaged in these acts, Defendants, and each of them, and their authorized policymaker superiors, ratified each Defendant's conduct as herein alleged and the basis for them, and Defendants, and each of them, knew of and specifically approved of the managing agents and employee's acts.

261.    The acts as herein alleged of Defendants were so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused Mr. Bahra's ultimate injuries as herein alleged.

262.    Defendants wrongfully and retaliatory terminated the employment of Mr. Bahra in violation of public policy, which provides for Mr. Bahra's right to Due Process, to maintain his property right

---

[7]  *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194

48

in his employment with the COUNTY CFS, and to be free from retaliation in the workplace. Defendants terminated his employment as a result of illegally intruding on his First Amendment Right to Free Speech and Fourth Amendment Right of Due Process as herein alleged. Mr. Bahra's speech was a motivating factor in his termination.

263.    Mr. Bahra was treated differently than other similarly situated COUNTY CFS employees.

264.    Defendants' adverse employment actions against Mr. Bahra as herein alleged were unprivileged, unlawful, and without a business purpose.  Defendants' actions and failures as alleged herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.  Defendants, while acting under color of state authority and law, wrongfully and intentionally failed to provide Mr. Bahra with his Due Process Rights and retaliated against Mr. Bahra for his participation in statutorily protected activity.

265.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

266.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

267.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

268.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

269.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

270.    Finally, as a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

## THIRTEENTH CAUSE OF ACTION
### Wrongful Termination
### In Violation of 14th Amendment Right To Due Process, Skelly
### *Monell* Action- Based on Policy of Failure To Train or Supervise
### In Violation of 42 U.S.C. § 1983
### (Against Defendant Employer)

271.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

272.    Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

273.    The United States Constitution provides: "nor shall any State shall deprive any person of life, liberty, or property without due process of law."  The Right To Due Process includes a Skelly Right, the Due Process Right of notice to a public employee of an intended disciplinary action. This right includes the right to obtain a copy of the materials on which the action is based, and an opportunity to respond orally or in writing to an impartial reviewed prior to discipline being imposed.[8] The Fourteenth Amendment Right to Due Process include the right to be free of

---

[8]  *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194

governmental fabricated, false and concocted evidence to support adverse employment action, such as termination of Mr. Bahra's employment.

274.     Mr. Bahra engaged in the protected activity described above and incorporated as though set forth here in full. Mr. Bahra was summarily terminated and not provided with all of his Constitutional Rights to Due Process. Defendants, and each of them, diligently searched for evidence against Mr. Bahra to support their rushed action to terminate his employment to cover-up Defendants' malfeasance, which caused scores of children to be placed in foster homes with known child molesters. Defendants, and each of them, provided sham investigations and a hearing supported with fabricated, false and concocted evidence. False evidence cannot and does not support the required Fourteenth Amendment Right of Due Process.

275.     Defendants COUNTY CFS Nickola Hackett, acting in her official capacity, and Burgamy, acting in her individual capacity, acted under of color of law at all times herein relevant.

276.     The acts of Defendants, and each of them, deprived Mr. Bahra of his particular rights under the laws of the United States and the United States Constitution as herein set forth, and under the Fourteenth Amendment Right to Due Process including but not limited to his Skelly rights. The Fourteenth Amendment Right to Due Process includes the right to be free of governmentally fabricated, false and concocted evidence to support adverse employment action, such as termination of Mr. Bahra's employment.

277.     '[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights.'[9]

278.     The training policies of Defendant COUNTY CFS were not adequate to train or supervise its employees to handle the usual and recurring situations with which they must deal.

279.     Defendant COUNTY CFS was deliberately indifferent to the obvious consequences of its failure to train its employees adequately.  Defendant COUNTY CFS knew that its failure to train or

---

[9] *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992), citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The policy of inaction must be a conscious or deliberate choice among various alternatives. Berry v. Baca, 379 F.3d 764, 767 (9th Cir.2004).

supervise adequately made it highly predictable that its employees would engage in conduct that would deprive persons such as Mr. Bahra of his rights.

280.    The failure of Defendant COUNTY CFS to provide adequate training caused the deprivation of Mr. Bahra's rights by Defendants, and each of them; the Defendants' failure to train or supervise is so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused the ultimate injury.

281.    The acts of Defendants as herein alleged were so closely related to the deprivation of Mr. Bahra's rights as to be the moving force that caused Mr. Bahra's ultimate injuries as herein alleged.

282.    DEFENDANTS wrongfully and in retaliation terminated the employment of Mr. Bahra in violation of public policy which provides for Mr. Bahra's right to Due Process, to maintain his property right in his employment with COUNTY CFS, and to be free from retaliation in the workplace. Defendants terminated his employment as a result of illegally intruding on his Fourth Amendment Right to Due Process as herein alleged, which was a motivating factor in his termination.

283.    Mr. Bahra was treated differently than other similarly situated COUNTY CFS employees.

284.    Defendants' adverse employment actions against Mr. Bahra as herein alleged were unprivileged, unlawful, and without a business purpose.  Defendants' actions and failures as alleged herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983.   Defendants, while acting under color of state authority and law, wrongfully and intentionally retaliated against Mr. Bahra for his participation in statutorily protected activity and failed to provide Mr. Bahra with his Constitutional rights to Due Process.

285.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages.

286.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

287.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

288.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

289.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

290.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

        Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

### FOURTEENTH CAUSE OF ACTION
**Invasion of Privacy**
**In Violation of Fourth and Fourteenth Amendment,**
**In Violation of 42 U.S.C. § 1983**
**(Against All Defendant)**

291. Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

53

292. Mr. Bahra brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons, who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party. The United States Constitution provides: "nor shall any State shall deprive any person of life, liberty, or property without due process of law."

293. The Fourth Amendment provides for privacy against the government. Fifth and the Fourteenth Amendments to the United States Constitution protect against the deprivation, *inter alia*, of liberty and property without due process of law.  "Liberty," includes the right to be free of defamation by a government official, when such defamation is made public and occurs in connection with the denial of some significant tangible interest. *Board of Regents v. Roth* (1972) 408 U.S. 564; *Goss v. Lopez* (1975) 419 U.S. 565. "Property," among other things, includes the rights of an employee to continued public employment where the employee can be terminated only for "cause."  *Arnet v. Kennedy* (1974) 416 U.S. 134.

294. Defendant Nickola Hackett, acting in concert with Defendant Burgamy, the head of the Victorville Office, invaded Mr. Bahra's privacy by falsely published writing for all clerks, administrators and the public to see, that Mr. Bahra had caused a young girl to attempt suicide. Defendant Nickola Hackett and Defendant Burgamy publicized this false information and material that showed and portrayed Mr. Bahra in a false light**.**

295.  Defendants' publication, based on known fabricated evidence, would be highly offensive to a reasonable person in Mr. Bahra's position as a professional social worker. Clear and convincing evidence proves that Defendants knew, intended, and acted with reckless disregard for the truth and with negligence in determining the truth, namely that the publication of the false information that Mr. Bahra had caused a minor girl to commit suicide would, and did, create a false impression about Mr. Bahra, injuring him in his profession.

296. Defendants Hackett and Burgamy acted without reasonable grounds for believing the truth of the statements, as further and additional proof of Defendants' hatred or ill will toward Mr. Bahra.

297. As to Defendants Nickola Hackett and Kristine Burgamy, the acts of these Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill

will and intent to injure Mr. Bahra and to cause him mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Mr. Bahra and with the intent to injure, constituting oppression, fraud, and malice, entitling Mr. Bahra to punitive damages against these individual Defendants only.

298.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

**FIFTEENTH CAUSE OF ACTION**
**Defamation Per Se**
**Slander/Liable**
**Violation of 42 U.S.C. 1893**
**Against All Defendants**

299.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

300. Defendants violated Mr. Bahra's Fourteenth Amendment "Liberty" and "Property" interest by defaming Mr. Bahra with publications of manufactured and fabricated evidence in their campaign to terminate his employment. Defendants' conduct violated 42 U.S.C. Section 1983.

301.    Defendant Nickola Hackett, acting in concert with Defendant Burgamy, the head of the Victorville Office, falsely published writing for all clerks, administrators and the public to see, that Mr. Bahra had caused a young woman to attempt suicide.

302.    That statement was false. The true facts are the following: The young woman was never accused of being under the influence of drugs by Mr. Bahra; she never attempted suicide; the police was never called to her home as a result of any contact with Mr. Bahra; she was never taken to the hospital; she was never placed on 5150 72-hour watch at that time as a result of any contact Mr. Bahra had with her. The young woman did not suffer any adverse effect from any contact with Mr. Bahra. These true facts were at all relevant times known to the Defendants.

303. People, administrators, co-workers, police officers, social workers, and members of the public reasonably understood that the statements were about Mr. Bahra as published by Defendants verbally and in writing.

304. People, administrators, co-workers, police officers, social workers, and members of the public reasonably understood Defendants' defamatory statements to mean that Mr. Bahra had been derelict in his duties as a professional social worker

305. Defendants Hackett and Burgamy failed to use reasonable care to determine the truth or falsity of the statements and maliciously published and republished the false statements with the intent to injure, and did indeed injure Mr. Bahra in his property, profession and occupation.

306. Defendant Hackett and Burgamy's wrongful conduct was a substantial factor in causing any of the following damages: Harm to Mr. Bahra in his property, business, trade, profession, and occupation; payments for attorney's fees as a result of the defamatory statements; Harm to his reputation; and severe mental and emotional distress, including shame, mortification, and hurt feelings.

307. Qualified Privilege (Civ. Code, § 47(c)) is unavailable to Defendants because Defendants Hackett and Burgamy acted with malice, hatred and ill will toward Mr. Bahra to cover up for their gross negligence which caused harm to foster children..

308. Defendants Hackett and Burgamy acted without reasonable grounds for believing the truth of the statements as further and additional proof of Defendants' hatred or ill will toward Mr. Bahra.

309. As to Defendants Nickola Hackett and Kristine Burgamy, the acts of these Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Mr. Bahra and to cause him mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Mr. Bahra and with the intent to injure, constituting oppression, fraud, and malice, entitling Mr. Bahra to punitive damages against these individual Defendants only.

310.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below

**STATE CLAIMS**

### SIXTEENTH CAUSE OF ACTION
**Violation of California Government Code § 8547**
**Whistleblower Protection Act**
**(Against Defendant Employer)**

311.   Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

312.   The "California Whistleblower Protection Act, California Government Code section 8547 et seq. provides: "The Legislature finds and declares that state employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution.  The Legislature further finds and declares that public servants best serve the citizenry when they can be candid and honest without reservation in conducting the people's business. ""Employee" means an individual appointed … employed or holding office in a state agency."

313. (b)  "Illegal order" means a directive to violate or assist in violating a federal, state, or local law, rule, or regulation, or an order to work or cause others to work in conditions outside of their line of duty that would unreasonably threaten the health or safety of employees or the public

314. "(c)  "Improper governmental activity" means an activity by a state agency or by an employee that is undertaken in the performance of the employee's duties, undertaken inside a state office, or, if undertaken outside a state office by the employee, directly relates to state government, whether or not that activity is within the scope of his or her employment, and that (1) is in violation of any state or federal law or regulation, including, but not limited to, corruption, malfeasance, bribery, theft of government property, fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, or willful omission to perform duty".

315.   The restrictions placed on Mr. Bahra by Defendants, the adverse employment action of termination of Mr. Bahra's employment, based on his engagement in free speech protected by the United States Constitution and the California Constitution as herein above alleged was unlawful and in violation of California Government Code § 8547.  Defendant Hackett and Burgamy's order to Mr. Bahra to stop working on the computer research which uncovered the systemic failure was

57

an illegal order, intended to conceal the gross "malfeasance" and "willful omission to perform duty" by these managing agent Defendants who allowed this systemic, un-remedied failure to occur. Defendant Hackett and Burgamy's illegal order "threaten the health or safety of …. the public", namely the additional children that may have been discovered who had been placed in the foster homes of known child molesters with revoked license. Removing Mr. Bahra from further work on the cases during the middle of his discovery of the systemic failure and embarking on a campaign of retaliatory acts, including Mr. Bahra's employment termination, were all illegal order, action and conduct in violation of California Whistleblower's Protection Act. Gov. Code. § 8547, et seq.

316.   As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages.

317.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

318.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

319.   As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

320.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

321.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

### SEVENTEENTH CAUSE OF ACTION
**Retaliation**
**In Violation of California Labor Code § 1102.5**
**(Against Defendant Employer)**

322.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

323.    California Labor Code § 1101.5 states: "1102.5 (a) An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties. (b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation,

hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

324.    Defendants, and each of them, violated Labor Code Section 1102.5 by retaliating against Mr. Bahra by falsely accusing him of approximately 25 Personnel Rule violations and terminating his employment simple because he discovered a systemic failure in the CFS system that was harming children and for disclosing his discovered information to his managers in his government agency, the persons with authority to correct the violations and noncompliance. Instead of focusing on fixing the failure, Defendants, and each of them, focused their attention on firing Mr. Bahra.

Mr. Bahra engaged in activity protected by Labor Code § 1102.5 as herein above alleged. Defendants knew that Mr. Bahra engaged in this protected activity. DEFENDANTS discriminated and retaliated against Mr. Bahra because he engaged in this protected activity.

325.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages.

326.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

327.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

328.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof.

329.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions.    Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

330.    As to Defendants Nickola Hackett and Kristin Burgamy, the acts of these Defendants as alleged herein were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Mr. Bahra and to cause him mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Mr. Bahra and with the intent to injure, constituting oppression, fraud, and malice, entitling Mr. Bahra to punitive damages against these individual Defendants only. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

331.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

### EIGHTEENTH CAUSE OF ACTION
**Negligence**
**California Government Code § 815.2**
**(Against All Defendants)**

332.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

333.    A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

334.    Defendants Nickola Hackett and Kristine Burgamy, at all relevant times, were engaged in ministerial duties and decisions, carrying out the normal day-to-day operations of Defendant COUNTY CFS when they engaged in the negligent actions towards Mr. Bahra as herein alleged.

335.    Defendants Nickola Hackett and Kristine Burgamy were negligent in implementing all adverse actions against Mr. Bahra as herein above alleged.  A reasonably prudent, properly trained and supervised manager would not violate the Constitutional and other rights of Mr. Bahra as herein alleged. Mr. Bahra lawfully engaged in his right to protected political speech and his summary termination, without due process and in violation of his Skelly rights constitutes negligence.

336.    DEFENDANTS Nickola Hackett and Kristin Burgamy, at all relevant times, were engaged in ministerial duties and decisions, carrying out the normal day-to-day operations of Defendant COUNTY CFS when they engaged in these actions.  At no relevant time were Defendants engaged in quasi-legislative or legislative policy-making such that immunity would attach for these intentional, illegal and despicable acts.

337.    As a direct and proximate result of Defendants' actions, Mr. Bahra was caused to suffer the serious harms as herein alleged.

338.    Defendants' negligence was a substantial factor in causing Mr. Bahra's harm.

339.    As a legal result of the above described conduct of Defendants, and each of them, Mr. Bahra has sustained and will continue to sustain physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation, and indignity, as well as other unpleasant physical, mental, and emotional reactions, damages to his good name, reputation, standing in the community and other non-economic damages.

340.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra was hindered, prevented and precluded from performing Mr. Bahra's usual activities, namely the full time position he had with the Defendant COUNTY CFS, causing Mr. Bahra to sustain damages for loss of income, wages, earnings, and earning capacity, pension contributions and credit time for working, benefits, and other economic damages, in an amount to be ascertained according to proof.  Mr. Bahra claims such amount as damages together with prejudgment interest

pursuant to California Civil Code § 3287 and any other provision of law providing for prejudgment interest.

341.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra suffered incidental, consequential and special damages in an amount according to proof.

342.    As a further legal result of the above-described conduct of Defendants, and each of them, Mr. Bahra has and will continue to incur attorney's fees and costs in an amount according to proof. Mr. Bahra's protected conduct was a substantial or motivating factor in any retaliatory acts taken by Defendant COUNTY CFS.

343.    The conduct of Defendants and their agents and employees as described herein was malicious, oppressive, and done with a willful and conscious disregard for Mr. Bahra's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents and employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants.

344.    As to Defendants Nickola Hackett and Kristine Burgamy, the acts of these Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Mr. Bahra and to cause him mental anguish, anxiety, and distress. DEFENDANTS' acts were done in conscious disregard of the risk of severe emotional harm to Mr. Bahra and with the intent to injure, constituting oppression, fraud, and malice, entitling Mr. Bahra to all statutory damages against these individual Defendants only.

345.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

## NINETEENTH CAUSE OF ACTION
### Defamation Per Se
### Slander/Liable
### Against All Defendants

346.    Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

347.   Defendant Nickola Hackett, acting in concert with Defendant Burgamy, the head of the Victorville Office, falsely published writing for all clerks, administrators and the public to see, that Mr. Bahra had caused a young girl to attempt suicide.

348.   That statement was false. The true facts are the following: The young woman was never accused of being under the influence drugs by Mr. Bahra; she never attempted suicide; the police were never called to her home as a result of any contact with Mr. Bahra; she was never taken to the hospital; she was never placed on 5150 72-hour watch at that time as a result of any contact Mr. Bahra had with her. The young woman did not suffer any adverse effect from any contact with Mr. Bahra. These true facts were at all relevant times known to the Defendants.

349. People, administrators, co-workers, police officers, social workers, and members of the public reasonably understood that the statements were about Mr. Bahra as Defendants published by Defendants verbally and in writing.

350.[3. People, administrators, co-workers, police officers, social workers, and members of the public reasonably understood Defendants' defamatory statements to mean that Mr. Bahra had been derelict in his duties as a professional social worker

351. Defendants Hackett and Burgamy failed to use reasonable care to determine the truth or falsity of the statements and maliciously published and republished the false statements with the intent to injure, and did indeed injure Mr. Bahra in his property, profession and occupation.

352.   Defendant Hackett and Burgamy's wrongful conduct was a substantial factor in causing any of the following damages: Harm to Mr. Bahra in his property, business, trade, profession, and occupation; payments for attorney's fees as a result of the defamatory statements; Harm to his reputation; and severe mental and emotional distress, including shame, mortification, and hurt feelings.

353. Qualified Privilege (Civ. Code, § 47(c)) is unavailable to Defendants because Defendants Hackett and Burgamy acted with malice, hatred and ill will toward Mr. Bahra to cover-up for their gross negligence which caused harm to foster children..

354. Defendants Hackett and Burgamy acted without reasonable grounds for believing the truth of the statements, as further and additional proof of Defendants hatred or ill will toward Mr. Bahra.

64

355. As to Defendants Nickola Hackett and Kristine Burgamy, the acts of these Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Mr. Bahra and to cause him mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Mr. Bahra and with the intent to injure, constituting oppression, fraud, and malice, entitling Mr. Bahra to punitive damages against these individual Defendants only.

356.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

## TWENTIETH CAUSE OF ACTION
### Invasion of Privacy
### Against All Defendants

357. Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

358. Defendant Nickola Hackett, acting in concert with Defendant Burgamy, the head of the Victorville Office, falsely published writing for all clerks, administrators and the public to see, that Mr. Bahra had caused a young girl to attempt suicide. Defendant Nickola Hackett and Defendant Burgamy publicized this false information and material that showed and portrayed Mr. Bahra in a false light**.**

359.  Defendants' publication, based on known fabricated evidence, would be highly offensive to a reasonable person in Mr. Bahra's position as a professional social worker. Clear and convincing evidence proves that Defendants knew, intended, and acted with reckless disregard for the truth and with negligence in determining the truth, and that the publication of the false information that Mr. Bahra had caused a minor girl to commit suicide would, and did, create a false impression about Mr. Bahra, injuring him in his profession.

360. Defendants Hackett and Burgamy acted without reasonable grounds for believing the truth of the statements as further and additional proof of Defendants' hatred or ill will toward Mr. Bahra.

361. As to Defendants Nickola Hackett and Kristine Burgamy, the acts of these Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Mr. Bahra and to cause him mental anguish, anxiety, and distress. DEFENDANTS' acts were done in conscious disregard of the risk of severe emotional harm to Mr. Bahra and with the intent to injure, constituting oppression, fraud, and malice, entitling Mr. Bahra to punitive damages against these individual Defendants only.

362.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

### TWENTY-FIRST CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
**Against All Individual Defendants**

363. Mr. Bahra incorporates by reference herein each and every paragraph of the complaint as though set forth here in full.

364. Defendant Nickola Hackett and Defendant Burgamy's intentional, willful and malicious conduct as herein alleged was extreme and outrageous and should not be tolerated in our civilized society. Defendants fabricated evidence, defamed Mr. Bahra and engineered his employment termination solely to protect their own careers.

365. As to Defendants Nickola Hackett and Kristine Burgamy, the acts of these Defendants as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Mr. Bahra and to cause him mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Mr. Bahra and with the intent to injure, constituting oppression, fraud, and malice, entitling Mr. Bahra to punitive damages against these individual Defendants only.

366.    As a direct and proximate result of the aforesaid unlawful acts of Defendants, and each of them, Mr. Bahra has suffered stress-related health consequences. Mr. Bahra claims general damages for such health problems in an amount to be proven at time of trial.

Wherefore, Mr. Bahra prays for judgment as more fully set forth below.

## PRAYER FOR RELIEF

Wherefore, Mr. Bahra prays for judgment against Defendants and each of them as follows:

1.      For general damages in an amount according to proof;

2.      For special damages in an amount according to proof;

3.      For prejudgment and post judgment interest in an amount according to proof;

4.      For reasonable attorney's fees and cost of suit therein;

5.      For punitive damages against the individual Defendants only in the amount of $7,000,000 as to each Defendant, or according to proof of the net worth of each Defendant.

6.      For statutory penalties and any other statutory relief;

7.      For such other and further relief as the court may deem proper.

8.      Mr. Bahra hereby demands a trial by jury.

**JURY TRIAL DEMANDED.**

DATED: August 17, 2016        LAW OFFICES OF VALERIE ROSS
                           LAW OFFICES OF BONNER AND BONNER


                           By:   */S/Charles A. Bonner*
                           CHARLES A. BONNER
                           ATTORNEY FOR MR. BAHRA